UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FRED BASSALI,
        Plaintiff,

                                     No. 1:08-cv-29

-v-

                                HONORABLE PAUL L. MALONEY

JOHNSON CONTROLS, INC.,
        Defendant.

OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Fred Bassali alleges he is the inventor or co-inventor of multiple patents currently

owned by Defendant Johnson Controls, Inc. In May 2006, Plaintiff filed an inventorship suit against

Defendant in the United States District Court for the Southern District of New York. On May 22,

2007, Plaintiff filed a second amended complaint. In January 2008, the case was transferred to the

Western District of Michigan. On February 27, 2009, Defendant Johnson Controls filed this motion

for summary judgment. (Dkt. No. 94.) Plaintiff filed a response. (Dkt. No. 105.) Defendant filed

a reply. (Dkt. No. 108.) Because extensive discovery occurred while the motion was pending, the

parties each filed supplemental briefs. (Dkt. Nos. 143 and 146.) Oral argument on Defendant's

motion was held on February 8, 2010.

I. STANDARD OF REVIEW

Summary judgment is appropriate only if the pleadings, depositions, answers to

interrogatories and admissions, together with the affidavits, show there is no genuine issue of

material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P.

56(c); *Tucker v. Tennessee*, 539 F.3d 526, 531 (6th Cir. 2008). The burden is on the moving party

to show that no genuine issue of material fact exists, but that burden may be discharged by pointing

out the absence of evidence to support the nonmoving party's case. *Bennett v City of Eastpointe*,

410 F.3d 810, 817 (6th Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).  The facts, and the inferences drawn from them, must be viewed in a light most favorable to the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Once the moving party has carried its burden, the nonmoving party must set forth specific facts showing there is a genuine issue for trial.  FED. R. CIV. P. 56(e); *Matsushita*, 475 U.S. at 574.  The question is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson*, 477 U.S. at 251-252.

## II.  BACKGROUND

In the mid to late 1980s, employees of the Prince Corporation conceived the idea for a Universal Garage Door Opener (UGDO), a device that could learn garage door opening codes and frequencies from transmitters.  (Compl. ¶ 6; Def. Ex. 17 - Bassali Affidavit ¶ 4.)  Plaintiff, working under the name "the Consulting Group," was contacted by Prince Corporation in October 1989 about designing radio frequency systems and circuits.  (Compl. ¶ 8; Bassali Affidavit ¶¶ 8-9.)  Prince Corporation contracted with Plaintiff from 1989 through 1996.  (Compl. ¶ 9; Bassali Affidavit ¶ 11.)  During this time, Plaintiff worked with several Prince Corporation employees, including Mark Zeinstra, Kurt Dykema, Paul VanLente and Paul Duckworth.  (Bassali Affidavit ¶ 12.)  A facsimile dated October 31, 1989 sent from Mark Zeinstra to Fred Bassali identifies and outlines the purpose and goals of Plaintiff's contract with Prince Corporation.  (Def. Ex. 22 - Attachments to Apr. 13, 2000 letter.)[1]

Employees of Prince Corporation filed applications for at least sixteen patents relating to the

---

[1]Filed under seal.

UGDO project between August 14, 1990 and December 18, 1997. (Def. Exs. 1-16.) The United States Patent Office issued patents on those sixteen applications between August 15, 1995 and July 18 , 2000. (*Id.*) At least one of the Prince Corporation employees with whom Plaintiff worked are listed as the inventor or co-inventors on all sixteen patents.[2] (Def. Exs. 1-16). Each of the patents were assigned to Prince Corporation. (*Id.*) Plaintiff is not identified as an inventor or co-inventor on any of the sixteen patents. (*Id.*)

In 1999, Plaintiff became aware of "some" of the patents assigned to Prince Corporation related to the UGDO. (Bassali Affidavit ¶ 14.) On January 14, 2000, Plaintiff, through counsel, sent a letter to the Prince Corporation asserting he should have been identified as an inventor on five patents assigned to the Prince Corporation. (Def. Ex. 18.)[3] On February 2, 2000, Defendant, through counsel, sent a facsimile back to Plaintiff's counsel indicating that Johnson Controls was the successor to Prince Corporation, and that an investigation into the matter had begun. (Def. Ex. 19.)[4] On March 3, 2000, Defendant, through counsel, sent a second letter to Plaintiff's counsel denying that Plaintiff was the inventor of any of the five patents. (Def. Ex. 20.)[5] This letter was the only substantive response by Defendant to Plaintiff. In a second letter with the same date, Defendant included, as an attachment, a document entitled "Preliminary Universal GDO Concerns And Costs."

---

[2]Zeinstra is identified as the co-inventor on 10 of the patents. Dykema is identified as the inventor or co-inventor on 12 of the patents. Duckworth is identified as the inventor or co-inventor on 7 of the patents. VanLente is identified as the co-inventor on 4 of the patents. Five other individuals are named as co-inventors on various patents: Suman, Devree, Peplinski, Matlin, and Zurawski. (Def. Exs. 1-16.)

[3]Filed under seal.

[4]Fined under seal.

[5]Filed under seal.

(Def. Ex. 21.)[6] At the bottom of the first page of that document are the characters "MLZ 8/18/88."

(*Id.*) On April 13, 2000, Plaintiff, through counsel, sent another letter to Defendant. (Def. Ex. 22.)[7] Plaintiff identifies several problems with the conclusion and reasoning in the March 3 letter. Plaintiff attached to his April 13 letter several schematic designs, one allegedly by Plaintiff and seven allegedly by Prince Corporation. (*Id.*) Plaintiff concluded this letter with a statement expressing an expectation that Defendant would have a prompt response. After April 13, 2000, the parties exchanged several additional letters, none of which addressed the merits of Plaintiff's inventorship claims.

On May 26, 2006, Plaintiff filed his initial complaint in the Southern District of New York. The initial complaint alleged a single claim for correction of inventorship under 35 U.S.C. § 256 and identified seven patents. On March 29, 2007, Plaintiff filed an amended complaint, still alleging a single count, but expanding the number of patents at issue to fifteen.[8] Plaintiff filed his second amended complaint on May 22, 2007. The second amended complaint adds a claim for unjust enrichment. On Defendant's motion to transfer venue, the action was transferred to the Western District of Michigan by court order dated December 20, 2007.

III. ANALYSIS

The second amended complaint alleges two counts: (1) correction of inventorship under 35

_____

[6]Filed under seal.

[7]Filed under seal.

[8]Plaintiff identified sixteen patents in the "facts" portion of his first amended complaint. The prayer for relief sought correction of inventorship for only fifteen patents. The last patent listed under in the "facts" portion, No. 6,091,343, is not listed under the prayer for relief. The same lists of patents are included in Plaintiff's second amended complaint.

U.S.C. § 256 and (2) unjust enrichment.[9]  Defendant moves for summary judgment against the correction of inventorship count on the basis of the doctrine of laches.  Defendant moves for summary judgment on the unjust enrichment count on the basis of the statute of limitations.

A.  COUNT I - CORRECTION OF INVENTORSHIP

1.  LEGAL FRAMEWORK

<u>CONTROLLING AUTHORITY</u>

The Federal Circuit Court of Appeals has exclusive jurisdiction over appeals from the final decision of a district court, if the district court's jurisdiction was based in part on an act of Congress relating to patents.  28 U.S.C. § 1295(a); *Apotex, Inc. v. Thompson*, 347 F.3d 1335, 1342 (Fed. Cir. 2003).  Accordingly, the Federal Circuit's rulings on substantive patent law are controlling authority on this court.  *See Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.*, 364 F.Supp.2d 820, 896 (S.D. Ind. 2005) ("Any appeal in this action, which arises under the patent laws of the United States, must be to the United States Court of Appeals for the Federal Circuit, 28 U.S.C. § 1295(a), whose precedent governs matters of substantive patent law in this court."); *GTE Wireless, Inc. v. Qualcomm, Inc.*, 192 F.R.D. 284, 286 n. 1 (S.D.Cal. 2000) ("The Federal Circuit has exclusive appellate jurisdiction on claims arising from patent law and therefore its authority is binding on this Court."); *see also Panduit Corp. v. All States Plastic Mfg. Co., Inc.*, 744 F.2d 1564, 1574-75 and n. 14 (Fed. Cir. 1984) (per curiam) (noting that procedural matters pertaining to patent issues, as opposed to procedural matters in patent cases that do not pertain to the patent issue, must conform to Federal Circuit law) *overruled on other grounds by Richardson-Merrell, Inc. v. Koller*, 472 U.S.

_____

[9]Unless otherwise noted, all citations and references in this section of the opinion cite and refer to this second amended complaint.

424 (1984).

<u>LACHES</u>

The seminal case applying the doctrine of laches to a patent case is *A.C. Aukerman Co. v. R.L. Chaides Constr.*, 960 F.2d 1020 (Fed. Cir. 1992) (*en banc*).[10] Although *Aukerman* was a patent infringement case, subsequent Federal Circuit panels have applied the laches principles outlined in *Aukerman* to correction of inventorship actions. *See Serdarevic v. Advanced Med. Optics, Inc.*, 532 F.3d 1352, 1358 (Fed. Cir. 2008); *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1161 (Fed. Cir. 1993). The purpose of the statute allowing for the correction of inventorship, 35 U.S.C. § 256, was to provide a remedy for situations where the true inventor or co-inventor was, for some reason, omitted from a patent that had already issued. *See Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed. Cir. 1994) ("Before the enactment of § 256, incorrect inventorship of an issued patent would simply invalidate the patent. The purpose of § 256 was to provide a remedy for a bona fide mistake in inventorship." (citing S.Rep.No. 1979, 82 Cong., 2d Sess (1952), *reprinted in* 1952 U.S.C.C.A.N. 2394, 2401)). However, the statute provides no limit for the time to correct an inventorship. *Id.*; *Advanced Cardiology Sys.*, 988 F.2d at 1162. Laches is an equitable bar to an action arising from a party's neglect or delay in bringing a suit which caused prejudice to the adverse party. *Aukerman*, 960 F.2d at 1028-29.

The application of the defense of laches is committed to the sound discretion of the district court. With its origins in equity, a determination of laches is not made

---

[10]The *en banc* panel was convened to "clarify and apply principles of laches and equitable estoppel which have been raised as defenses in this patent infringement suit." *Aukerman*, 960 F.2d at 1028. Judge Plager was the only member of the panel to issue a separate opinion in which he concurred in part and dissented in part. *Id.* at 1046-47. Judge Plager pointed out, the only differences between the *en banc* panel opinion and the earlier panel opinion revolve around the presumption that arises after six years. *Id.* at 1046.

upon the application of "mechanical rules." The defense, being personal to the particular party and equitable in nature, must have flexibility in its application. A court must look at all of the particular facts and circumstances of each case and weigh the equities of the parties.

It is, however, well settled that, to invoke the laches defense, a defendant has the burden to prove two factors:

1. the plaintiff delayed filing the suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or should have known of its claim against the defendant, and

2. the delay operated to the prejudice or injury of the defendant.

*Id.* at 1032 (citations omitted); *see also Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*, 60 F.3d 770, 773 (Fed. Cir. 1995).

The decision to apply the laches defense is within the discretion of the trial judge. *Serdarvec*, 532 F.3d at 1358 (quoting *Aukerman*, 960 F.2d at 1032); *Intirtool, Ltd. v. Texas Corp.*, 369 F.3d 1289, 1294 (Fed. Cir. 2004) (holding the circuit court reviews the decision that a suit is barred by laches for an abuse of discretion). When considering the laches defense, courts must consider the length of the delay, the seriousness of the prejudice, the reasonableness of any excuses and the defendant's conduct or culpability in order to determine whether the plaintiff dealt unfairly with the defendant by not promptly bringing the suit. *Aukerman*, 960 F.2d at 1034. The Federal Circuit explained the role the trial court's discretion plays in determining whether to apply the laches defense.

It must be emphasized that the establishment of the factors of undue delay and prejudice, whether by actual proof or by the presumption, does not *mandate* recognition of a laches defense in every case. Laches remains an equitable judgment of the trial court in light of all the circumstances. Laches is not *established* by undue delay and prejudice. Those factors merely lay the foundation for the trial court's exercise of discretion. Where there is evidence of other factors which would make it inequitable to recognize the defense despite undue delay and prejudice, the defense may be denied.

*Id.* at 1036 (emphasis in original).

<u>Unreasonable Delay</u>

When determining the first factor, unreasonable delay, the period of time is measured from the point when the plaintiff had actual notice of the claim, or would have reasonably been expected to inquire about the claim. *Advanced Cardiovascular Sys.*, 988 F.2d at 1161 (citing *Aukerman*, 960 F.2d at 1032). The period of delay cannot start while a party remains ignorant that he or she has a cause of action. *Id.* at 1162; *see Halstead v. Grinnan*, 152 U.S. 412, 417 ("[T]here can be no laches in failing to assert rights of which a party is wholly ignorant."). Absent evidence of actual knowledge, the facts and circumstances must support a duty to inquire in order for the period of delay to have begun. *Advanced Cardiovascular Sys.*, 988 F.2d at 1162 (quoting *Johnson v. Standard Mining Co.*, 148 U.S. 360, 370 (1893)). In correction of inventorship actions, any constructive notice of a patent arising from the issuance of the patent does not necessarily begin the running of the clock for an erroneously omitted inventor to file a suit. *See Id.* ("Constructive notice is not an appropriate substitute for the determination of reasonableness or excuse for delay."). The inquiry for the delay factor remains focused on when the claimant knew or should have known of the claim.

It is not sufficient simply for time to have passed, the delay must also be unreasonable. *Advanced Cardiovascular Sys.*, 988 F.2d at 1162-1163. "The length of time which may be deemed unreasonable has no fixed boundaries but rather depends on the circumstances." *Aukerman*, 960 F.2d at 1032. "A court must consider and weigh any justification offered by the plaintiff for its delay." *Id.* at 1033. Excuses that have been recognized in certain instances include: other litigation, negotiations with the defendant, poverty and illness in limited circumstances, wartime conditions, extent of infringement, and dispute over ownership of the patent. *Id.* (citations omitted). "The focus

is on reasonableness." *Gasser Chair*, 60 F.3d at 773. A claimant's inability to find counsel willing to litigate his or her claim does not constitute a reasonable excuse for the delay. *Serdarevic*, 532 F.3d at 1360; *see also Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996) ("A patentee's inability to find willing counsel, . . . , is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit." (collecting cases)). Additionally, "'illness' is not typically recognized as a reasonable excuse in the laches context for patent suits." *FMC Corp. v. Guthery*, No. 07-5409, 2009 WL 1033663, at * 4 (D.N.J. Apr. 17, 2009) (citing *Whitehall Corp. v. W. Geophysical Co. of America*, 664 F.Supp. 1056, 1073 (S.D. Tex. 1986) ("Illness is not generally recognized as an adequate excuse for a plaintiff's delay in bringing suit.") and *Seghers v. Gardella*, 55 F.Supp. 914, 915 (N.D. Ohio 1944) (finding, if health concerns were sufficiently serious that the trial could have been postponed so the rights of the parties remained the same as they were when the complaint was filed.)). The single case on illness as an excuse cited in the *Aukerman* opinion considered illness as one of many factors justifying the delay. In *Frank F. Smith Hardware Co. v. S.H. Pomeroy Co.*, 299 F. 544, 547 (1924), the circuit court concluded a delay of more than ten years was reasonable due to a combination of factors: poverty of the claimant, extensive litigation to establish the validity of the patent, the illness of the patentee, and the nature and extent of the infringement. *Id.* at 546 (agreeing with the reasons identified by the appellant as excusing the delay).

<u>Material Prejudice</u>

"Material prejudice to adverse parties resulting from the plaintiff's delay is essential to the laches defense. Such prejudice may be either economic or evidentiary." *Aukerman*, 960 F.2d at 1033 (citing *Cornetta v. United States*, 851 F.2d 1372, 1378 (Fed. Cir. 1988 (*en banc*)). Evidentiary

prejudice may be established by demonstrating an "inability to present a full and fair defense on the merits due to a loss of records, the death of a witness, or the unreliability of memories of long past events." *Id.* (citations omitted). Economic prejudice occurs when the defendant "will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id.* (citations omitted). In either case, the critical inquiry is whether the prejudice arises from the claimant's unreasonable delay in filing suit. "[T]he change in [the defendant's situation] must be because of and as a result of the delay." *Gasser Chair*, 30 F.3d at 774 (quoting *Hemstreet v. Computer Entry Sys. Corp.*, 972 F.2d 1290, 1294 (Fed. Cir. 1992)); *see also State Contracting & Eng'g Corp.*, 346 F.3d 1057, 1066 (Fed. Cir. 2003) ("A nexus must be shown between the patentee's delay in filing suit and the [prejudice suffered]."). "By definition, actions undertaken before the delay period, however prejudicial, may not figure at all in the analysis." *Hall*, 93 F.3de at 1557. In terms of evidentiary prejudice, evidence that "witnesses who could have testified as to the validity and infringement no longer have documents needed for their testimony, and that memories have faded" may not be sufficient. *Id.* at 1556-57 (holding that such evidence "lack[ed] any indication that the reportedly missing records were lost or destroyed between 1987 and the date the suit was filed [, 1992], or that the allegedly faded memories were intact before 1987 and have only faded between 1987 and 1992."). In terms of economic prejudice, the "change in the economic position of the [defendant] during the period of delay must be the result of the delay; the [defendant] must prove that the change in economic position would not have occurred had the [claimant] sued earlier." *Gasser Chair*, 60 F.3d at 775. Economic prejudice is not established by identifying damages that might arise from a finding of liability, otherwise economic prejudice would arise in every suit. *Aukerman*, 960 F.2d at 1033. The Federal Circuit has warned that "economic prejudice is not a

simple concept but rather is likely to be a slippery issue to resolve." *Id.*

## Presumption of Laches

In *Aukerman*, the *en banc* panel affirmed that a presumption of laches arises after six years. 960 F.2d at 1035-36. "*Prima facie*, the underlying critical factors of laches are presumed upon proof that the [plaintiff] delayed filing suit for more than six years after actual or constructive knowledge" of the patent of which he or she alleges inventorship. *Id.* The presumption that arises is a rebuttable one. *Advanced Cardiovascular Sys.*, 988 F.2d at 1163. Once the presumption is triggered by evidence that the plaintiff failed to file suit within six years of actual or constructive knowledge of his or her inventorship claim, both the unreasonableness of the delay and material prejudice must be inferred, absent rebuttal evidence. *Aukerman*, 960 F.2d at 1037. Once the presumption of laches is triggered, the burden is on the plaintiff to produce evidence to counter or rebut the presumption. *Id.* The ultimate burden of persuasion, however, always remains on the defendant. *Id.* at 1038-39. If the presumption is not overcome, the defendant may remain "*utterly mute* . . . and nonetheless prevail." *Hall*, 93 F.3d at 1554 (emphasis in original).

At the summary judgment stage, the plaintiff overcomes the presumption of laches by offering evidence sufficient to create a genuine issue of material fact on *either* the delay *or* the prejudice element, or both. *Aukerman*, 960 F.2d at 1038; *see also Hall*, 93 F.3d at 1553-54. Once the presumption "bubble" is "burst," the presumption "completely vanishes." *Aukerman*, 960 F.2d at 1037 (explaining the "bursting bubble" theory of presumptions embodied in Rule 302 of the Federal Rules of Evidence). Once the plaintiff overcomes the presumption, the burden of production returns to the defendant to establish both elements of the laches defense. *Id.* at 1038.

## Egregious Conduct

One other way a plaintiff may overcome a laches defense is to demonstrate that the defendant "'has engaged in particularly egregious conduct which would change the equities significantly in plaintiff's favor.'" *Gasser Chair*, 93 F.3d at 775 (quoting *Aukerman*, 960 F.2d at 1033)). "It is not enough merely to show misconduct." *Serdarevic*, 532 F.3d at 1361 (collecting cases on the unclean hands doctrine). The plaintiff must show that the defendant both engaged in misconduct and that the defendant's misconduct was the cause of the plaintiff's delay in bringing suit. *Id.* Such a showing would be sufficient to preclude application of the laches defense, *even if* the plaintiff was unable to overcome the presumption of laches. *Aukerman*, 960 F.2d at 1038.

2. APPLICATION OF FACTS

Without dispute, Plaintiff was aware of five patents related to the UGDO project no later than January 14, 2000. In his letter to the Prince Corporation on that date, Plaintiff identifies five of the patents included in the complaint. As of January 14, 2000, Plaintiff was on notice that patents had been issued and assigned to the Prince Corporation relating to UGDO technology. Each of the five patents identified in the January 14 letter named, as the inventors, in various combinations, the four individuals Plaintiff allegedly had contact with while performing work for Prince Corporation. This knowledge gave rise to a duty to make further inquiries. A reasonable person with this knowledge would have made inquiries to determine if other patents had been issued naming any of those four individuals as inventors. A reasonable person with this knowledge would also have made inquiries to determine if other patents naming these individuals as inventors had been assigned to the Prince Corporation. Every one of the fifteen patents identified in Plaintiff's prayer for relief had been

issued before January 14, 2000.[11]  Every one of the fifteen patents identified in the prayer for relief lists, as an inventor, at least one of the individuals with whom Plaintiff alleges he had contact with while working for Prince Corporation.  Every one of the fifteen patents identified in the prayer for relief was assigned to the Prince Corporation.

Because Plaintiff knew or had reason to know of the existence of the patents more than six years before he filed suit, the presumption of laches arises; the court assumes both unreasonable delay and material prejudice.  Plaintiff, therefore, has the burden to produce evidence to create a genuine issue of material fact on the laches defense in order to survive summary judgment.  Plaintiff can force Defendant to establish, with evidence, a lack of a genuine issue of material fact only if Plaintiff can burst the bubble of either the unreasonable delay or the material prejudice elements.

Plaintiff has not put forth sufficient evidence to overcome the presumption of unreasonable delay.  Plaintiff offers three arguments: (1) he could not find a willing attorney, (2) he had to care for his sick parents, and (3) there were on-going negotiations between the two parties.  None of these three arguments establish that Plaintiff's delay was reasonable.  Inability to find an attorney willing to take your case is not a legally cognizable excuse.  Courts have rejected sickness of one of the litigating parties as an excuse for delay in filing patent cases.  It follows that if an illness of one of the parties is not an excuse, sickness of another person would also not be an excuse.  Plaintiff has offered, as evidence, extensive medical records establishing the extent of his parents' infirmities.  Plaintiff has not offered any authority suggesting either of these excuses have been recognized in the context of a laches defense.  Defendant, however, has offered evidence undermining this excuse.

---

[11]Patent No. 6,091,343, identified in the facts portion of the complaint, but not in the prayer for relief, was issued on July 18, 2000.

During his deposition, Plaintiff admitted he filed a trespass suit either in 2001 or 2002. (Def. Supp. Br. Ex. A - Pl. Dep., 9.) If Plaintiff was able to initiate a separate lawsuit, it undermines his contention that he was unable to pursue this lawsuit. Finally, Plaintiff's argument that he was engaged in negotiations with Defendant is unpersuasive. Without question, Plaintiff had knowledge of his cause of action in January 2000. The last communication of any substance from Defendant to Plaintiff during the alleged negotiations was in March 2000. The extent of the negotiation after that was limited to Plaintiff's efforts. Plaintiff's last letter of substance was sent in April 2000. It was clear to Plaintiff before the end of the summer in 2000, after receiving no response to his queries, that Defendant would not alter its conclusion that Plaintiff was not the inventor. This hardly constitutes a "negotiation." Neither does it excuse the subsequent years of delay in filing suit. Finally, Plaintiff cannot rely on the date of his last letter as the date his claim of action accrued. The date of his last letter was not the date on which Plaintiff knew or should have known about his cause of action.

Because Plaintiff cannot establish the delay was reasonable, the court considers whether Plaintiff has burst the presumption that Defendant suffered material prejudice. As a result of a motion to compel filed by Plaintiff on February 17, 2009, Defendant agreed to produce an individual for deposition under Rule 30(b)(6) of the Federal Rules of Civil Procedure.[12] (Pl. Ex. 37 - Hearing Transcript, 21-22.) James Trainor was deposed on Defendant's behalf on April 16, 2009. (Pl. Ex. 36 - Trainer Dep.) Trainor testified that any relevant engineering notebooks relevant to UGDO research in Defendant's possession had been gathered and stored in one location because of earlier

---

[12]Rule 30(b)(6) allows a party to name a corporation or other entity as a deponent. Once so noticed, the entity must designate an officer, director, or other person to testify on its behalf. FED. R. CIV. P. 30(b)(6).

litigation.  (*Id.*, 24.)  Trainor testified, to the best of his knowledge, the notebooks and records of the people who worked for Prince Corporation had not been lost or misplaced or destroyed during the acquisition of Prince Corporation by Johnson Controls.  (*Id.*, 25.)  When asked whether the materials regarding the radio frequency circuitry work for the UGDO still existed, Trainor testified "[t]hey are either in the archive or in the possession of legal."  (*Id.*, 26.)

> Q.  For the time period, including '86 to '96 then, would it be fair for me to understand that JCI has made repeated efforts to find all the documents that relate to this RF circuitry work?
> A.  From that time period, yeah.
> Q.  And that what ever has been found was put in the archive, is that a fair statement?
> A.  And is available, yes.

(*Id.*, 32.)  Trainor also testified that the letters Plaintiff sent to Defendant in 2000 regarding his patent claims did not change Defendant's marketing or development efforts with regard to the UGDO.  (*Id.*, 36.)

Plaintiff has demonstrated, with evidence, that Defendant has collected documents related to the UGDO patents for other litigation, and has archived those documents.  Plaintiff has produced evidence that the notebooks and records were not lost or destroyed, at least since Defendant began to archive them for the purpose of other litigation.  Plaintiff has also put forth evidence that his letters in 2000 did not alter Plaintiff's development or marketing strategies for the UGDO.  Accordingly, Plaintiff has met his burden with regard to both evidentiary and economic prejudice.  Any presumption of laches has been overcome.  At this point, Defendant has the burden of production on both elements of the laches defense.

Defendant is not entitled to summary judgment on the laches defense.  Defendant can establish that Plaintiff's delay was unreasonable.  For the reasons outlined above, Plaintiff was aware of his claims on at least five of the patents in January 2000.  Plaintiff should have been aware of his

claims on the other patents as of January 2000. Six years is an unreasonable amount of time to sit on one's claims. Plaintiff's excuses are not legally cognizable.

Defendant, however, has not established, with supporting evidence, that it has suffered any material prejudice as a result of Plaintiff's delay. Defendant submits a declaration by Trainor, executed on February 25, 2009, that "[d]ue to the passage of time, many of JCI's documents that are relevant to Mr. Bassali's claims in this case may no longer exist or are burdensome or impossible for JCI to locate." (Def. Ex. 26 - Trainor Declaration ¶ 6.) It is impossible to reconcile this statement in his declaration with his later deposition testimony. None of the relevant witnesses, individuals who worked for Prince Corporation, have died, although some do not work for Defendant. Defendant states, without any supporting evidence or documentation, that the individuals who Plaintiff wishes to depose will have unreliable memories due to the passage of time. This statement does not meet the nexus requirement critical to a finding of material prejudice. All memories fade. The evidence does not establish that the memories were diminished in any relevant sense as the result of Plaintiff's six year delay.

In its reply brief, Defendant argues the "other litigation" referred to by Trainor caused Defendant to gather the relevant documentary materials in 2004. (Def. Reply Br. and attached Trainor Affidavit.) At best then, any evidentiary prejudice must necessarily have occurred between 2000 and 2004. If Plaintiff had filed his suit in 2004, no presumption of laches would have arisen and Plaintiff would have to establish material prejudice based on the delay between 2000 and 2004. None of Defendant's evidence establishes a nexus between this four year delay and the loss of documents or memories. Defendant's references to documents that were created in the late eighties and early nineties is interesting, but ultimately irrelevant. Plaintiff's cause of action could not exist

until the patent is issued. Plaintiff then had to become aware of the patents before his correction of inventorship action accrued. Accordingly, the measurement of delay is not from the creation of the document to the time the suit is filed, but from the time Plaintiff became aware of the suit to the time the suit is filed. Any destruction or loss of documentation prior to the time Plaintiff became aware of his claim is not relevant to the prejudice element of Defendant's laches defense, because that loss cannot be blamed on Plaintiff's delay.

Trainor also declares that Defendant has incurred considerable costs in developing and commercializing the UGDO. (Trainor Declaration ¶¶ 3-4.) Again, Trainor's statement does not establish the required nexus between the cost incurred and Plaintiff's delay. Trainor does not state that Defendant would not have incurred the expenses had Plaintiff filed his suit earlier. Trainor does not state that Defendant would have pursued a different development and marketing strategy if Defendant would have brought his suit earlier. In his later deposition, Trainer testified to the opposite conclusion, that Plaintiff's letters in 2000 had no impact on the development and marketing strategies for the UGDO.

Plaintiff's assertion of Defendant' unclean hands bears mentioning. Plaintiff initially insists that Defendant has unclean hands because it produced a fraudulent conception document attached to its March 3, 2000 letter. Plaintiff argues the allegedly fraudulent document deterred attorneys from pursuing the litigation. A document specialist determined that the text of the conception document and initials and date at the bottom of the first page were likely printed at different times. (Pl. Ex. 11.) Plaintiff's evidence does not establish unclean hands. Plaintiff's own expert could not determine whether the date was printed first or the text of the conception document was printed first.

Plaintiff also argues Defendant has unclean hands because it moved to transfer venue on the

basis of convenience and then stubbornly refused to participate in discovery, complaining that much of the evidence no longer existed. Plaintiff suggests it is disingenuous to argue the evidence is located in Michigan in a motion to transfer venue and then assert in response to discovery motion that the evidence does not exist. Again, Plaintiff's evidence is not evidence of unclean hands. To the extent the evidence exists, including the witnesses who may testify, the district court in New York concluded the case was better heard in Michigan. The fact that some of the documentary evidence may have been destroyed or has been lost does not undermine the basis for transferring venue. The search for the evidence occurred in Michigan. The remaining evidence, of which Defendant produced some 160,000 pages, exists in Michigan.

In his supplemental brief, Plaintiff offers a number of other new and unique theories to support its unclean hands argument. Plaintiff argues Defendant misrepresented his involvement in its March 3, 2000 letter. Plaintiff argues several key witnesses have testified that he should have been named as an inventor. Plaintiff identifies documents produced by Defendant that bear Plaintiff's name. While interesting, these arguments and evidentiary claims are relevant as proof of Plaintiff's claim, not proof of Defendant's unclean hands.

## B. COUNT II - UNJUST ENRICHMENT

In count 2, Plaintiff asserts a state law claim for unjust enrichment. Defendant contends Plaintiff's unjust enrichment claim is barred by the statute of limitation. Defendant reasons Plaintiff's claim accrued when the patent issued. Defendant cites no authority for this proposition. Plaintiff counters that his claim accrued when Defendant retained money or benefits which rightfully belonged to him, citing *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). Plaintiff contends it is indisputable that Defendant earned profits from Homelink system over the past six years. In their

reply, Defendants explain that the only occurrence of a wrongful act mentioned in the complaint is the omission of Plaintiff as a co-inventor of the patent. Defendant reasons the wrongful act could not be the commercialization of the patents because such an approach to an unjust enrichment claim would create a situation where a plaintiff could always recover the last six years of profits from a commercial enterprise.

## 1. LEGAL FRAMEWORK

### CONTROLLING AUTHORITY

"'A federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction.'" *Cook v. All State Home Mortgage, Inc.*, 329 F.App'x 584, 588 (6th Cir. 2009) (quoting *Chandler v. Specialty Tires of America (Tennessee), Inc.*, 283 F.3d 818, 823 (6th Cir. 2002)). However, when an action has been transferred from one federal court to another under 28 U.S.C. § 1404(a), "the transferee district must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms." *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *see Martin v. Stokes*, 623 F.3d 469, 471 (6th Cir. 1980). Therefore, this court applies New York law to Plaintiff's unjust enrichment claim.

### UNJUST ENRICHMENT

Under New York law, "[t]o prevail on a claim of unjust enrichment, a plaintiff must establish that the defendant benefitted at the plaintiff's expense and that equity and good conscience require restitution." *Whitman Realty Group, Inc. v. Galano*, 838 N.Y.S.2d 585, 587-88 (N.Y. App. Div. 2007). "A cause of action for unjust enrichment arises when one party possesses money or obtains

a benefit that in equity and good conscience they should not have obtained or possessed because it rightfully belongs to another." *Mente v Wenzel*, 577 N.Y.S.2d 167, 169 (N.Y. App. Div. 1991); *see Clifford R. Gray, Inc. v. LeChase Constr. Servs., LLC*, 819 N.Y.S.2d 182, 187 (N.Y. App. Div. 2006) ("A cause of action for unjust enrichment requires a showing that (1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."). The statute of limitations for an unjust enrichment claim under New York law is six years. *Serdarevic*, 532 F.3d at 1362. "The statute of limitations for unjust enrichment begins to run when a defendant accepts the benefits bestowed upon him[] or on the occurrence of the wrongful act giving rise to the duty of restitution." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau County, Inc.*, 558 F.Supp.2d 378, (E.D.N.Y. 2008) (internal citation and citation omitted); *see T.E.A.M. Entm't, Inc. v. Douglas*, 361 F.Supp.2d 362, 369 (E.D.N.Y. 2005) ("[A] claim for unjust enrichment accrues only when the enrichment becomes unlawful."). In a summary judgment motion, the defendant bears the burden of establishing that the plaintiff's cause of action was precluded by the applicable statute of limitation. *Bd. of Educ. of Town of Webb Union Free Sch. Dist. v. Garland Co., Inc.*, 593 N.Y.S.2d 642, 643 (N.Y. App. Div. 1993); *see In re Estate of Baird*, 871 N.Y.S.2d 755, (N.Y. App. Div. 2009) ("The party asserting the statute of limitations defense bears the burden of proof on the issue.").

2. APPLICATION OF FACTS

Count 2 of the complaint, the claim for unjust enrichment, is short. (Compl. ¶¶ 18-20.) After reiterating and incorporating the prior paragraphs (*Id.* ¶ 18), Plaintiff asserts "[a]s a result of the actions described herein, JCI has been unjustly enriched to Mr. Bassali's detriment in the amount to be determined at trial (*Id.* ¶ 19). In the preceding paragraphs, Plaintiff states he was hired as a

consultant (*Id.* ¶ 9), he worked on the design of transmitter and receiver circuits for use in an UGDO device (*Id.* ¶¶ 10 and 11), and that he recognized in the patents at issue some of his circuitry and methods he provided to individuals at Prince Corporation (*Id.* ¶ 13). Plaintiff concludes he should have been named as an inventor or co-inventor as a result. (*Id.* ¶¶ 13-14.) From these passages, the factual basis for Plaintiff's claim is not entirely clear. The basis for the claim, however, must be something other than an attempt to recover money from the licensing and enforcement of the patents at issue for which Plaintiff claims to be a co-inventor. *See Tavory v. NTP, Inc.*, 297 F.App'x 976, 982-84 (Fed. Cir. 2008) (holding that such a state law claim is preempted by federal patent law).

Plaintiff's claim for unjust enrichment is barred by New York's six year statute of limitations. Plaintiff's claim accrued more than six years prior to when the suit was filed. *See e.g., Sirico v. F.G.G. Prods., Inc.*, ___ N.Y.S. ___, 2010 WL 724344, at *4 (N.Y. App. Div. Mar. 4, 2010) (dismissing as time-barred a claim for unjust enrichment based on music recordings made in the 1960s where the plaintiffs alleged they were owed royalties and a share of income from licenses). If Prince Corporation used Plaintiff's work product without his permission to realize some benefit, the elements of a claim for unjust enrichment might be present. *See Thompson v. Microsoft Corp.*, 471 F.3d 1288, 1291-92 (Fed. Cir. 2006); *Univ. of Colorado Found., Inc. v. American Cyanamid Co.*, 196 F.3d 1366, 1371-72 (Fed. Cir. 1999). However, those events would have more than six years prior to the filing of the suit and Plaintiff knew or should have known about those events more than six years prior to the filing of the suit.

## IV. CONCLUSION

Defendant Johnson Controls' motion for summary judgment (Dkt. No. 94) is granted in part and denied in part. Plaintiff's state law claim for unjust enrichment is barred by New York's six

year statute of limitations. Plaintiff's claim must be predicated on events that occurred more than six years before the suit was filed. Defendant is not entitled to summary judgment on Plaintiff's inventorship claim on the basis of laches. Although a presumption of laches arises because Plaintiff knew or should have known of his claim more than six years before the suit was filed, Plaintiff presented sufficient evidence showing that Defendant had not suffered any prejudice as the result of his delay in filing suit. That evidence was sufficient to overcome any presumption of laches. Although Defendant could establish the delay was unreasonable, Defendant could not establish that the delay caused it to suffer any economic or evidentiary prejudice.


## ORDER

For the reasons provided in the accompanying opinion, Defendant Johnson Control's motion for summary judgment (Dkt. No. 94) is **GRANTED IN PART and DENIED IN PART.** Plaintiff's claim for unjust enrichment is **DISMISSED WITH PREJUDICE** as time-barred. **IT IS SO ORDERED.**

Date:   May 12, 2010                                         /s/ Paul L. Maloney
                                                                  Paul L. Maloney
                                                                  Chief United States District Judge